Good morning, your honors. My name is Jeff Brandt. On behalf of Jaime Moreno, our client is guilty of buying and selling two kilograms of cocaine. He bought two kilograms from Juan Carlos, somebody he knew, and he sold them to Jose Dario Echavarria, somebody also he knew. The problem is jury found him guilty of conspiring to traffic in drugs. That is definitely a problem, your honor. That's why we're appealing. I want to speak a little closer to the problem. We are appealing and submitting that there is no conspiracy. There is no conspiracy. The problem is that he testified on the stand that he knew what was going to happen to those two pounds. Just to stick with that for the moment. Those two pounds were going to be broken up and distributed. You're my nightmare, your honor. But you're correct. That's another problem. On page 167 of the excerpt of record, he testifies that he had an understanding, an agreement with Juan Carlos and Echavarria, and the purpose of these agreements was to transfer two kilograms of cocaine. We stand by our argument there was no conspiracy. But your honors, if there is a conspiracy, there's no evidence in the trial, and I make a distinction between the trial and sentencing, that Moreno has any connection to Alaska, an Alaskan-based conspiracy. He did take the stand and admit to an agreement, but it's instructive that the agreement involved Carlos and Echavarria. Did Moreno intend to further the goals of the conspiracy that extended to distribute cocaine in Alaska? Moreno never saw Eris Mendy, who's our person flying from Alaska to Los Angeles. He didn't know who she was. He saw her briefly. Eris Mendy didn't mention Moreno's name at all. Didn't mention his name. Was told specifically not to deal with him. This is more than saying nobody in the Alaska conspiracy sat down with Moreno and, you know, the typical argument, hey, I didn't sit down with anybody and make a deal to have a conspiracy. This is much more than that. This is a conspiracy, an Alaskan conspiracy saying whatever you do, don't deal with El Loco, who is Moreno. Echavarria was supposed to have two kilograms of cocaine waiting for Eris Mendy. He didn't. He messed up. She said, go get me two kilograms. He did. He drove around Los Angeles. He found nothing. He looked some more. He found nothing. He looked some more. He found nothing. Last second, last ditch effort, he breaks the rules. Does what the conspiracy is not supposed to do. Kills the conspiracy by going and contacting Moreno. Kills the Alaskan conspiracy and although we dispute that there's any conspiracy, possibly creates another agreement to get two kilograms. The testimony at trial is black and white different from the testimony at sentencing. The testimony at trial is either not about Moreno at all. Well, you know, maybe the best thing to do is explain what difference all that makes. I mean, if Moreno agreed that he would supply two kilograms of cocaine for the purpose of breaking it down and distributing it, what difference does it make whether it ends up in Los Angeles where he testified he thought it would end up or in Phoenix or in Keokuk, Iowa or in Ketchikan? We submit that because at best the government proved a conspiracy involving three people and that Moreno's intent to distribute was not the same conspiracy as the Alaskan conspiracy that it would end up there. That if the government's proved a conspiracy, it has not proved a conspiracy that involves Moreno in the Alaskan part and therefore venue in Alaska would be improper. We ask the court to look at that trial evidence that it either has nothing to do with Moreno or if it does, it's exactly what Moreno has always admitted he did and that is buy and incredibly meticulous. She had names, she had dates, she had addresses and no mention of Moreno whatsoever. Another point is how disturbing it is that the disparity of evidence between the trial and sentencing. It's all about two kilograms of cocaine at trial. And then it's sentencing, it's all about another 13 kilograms of cocaine. Counsel, give me your argument on this special verdict and how that plays with respect to taking into account the subject. It's an argument that his right to jury trial and his due process rights have been violated because it's a game of hide the ball. I don't know that it's an Apprendi or a Watts case because I think the government even gets around Apprendi and Watts by doing the following, taking all of its best evidence, its strong evidence, its clear evidence, evidence, by the way, that's strong and clear because Moreno admits it. That's why it's strong and clear and takes it to the jury and says, dear jury, look, he's guilty of sin. He even admits it on the stand. And in the entire time is hiding in its front pocket evidence of another 13 kilograms. And then takes that evidence to the district court judge at sentencing and says, look at all this other stuff. In essence, the government's saying, all we have to do is prove 501 grams. Moreno was involved with 501 grams. And if we prove that, we can knock him over the head with all this other stuff that's weak, weak evidence that we could never get by a jury. It's too confusing. It sounds like dirty pool. But do you have any authority which recognizes this? If I had that authority, I have it all over my face right now, written backwards so you could read it. It's an old Kentucky lawyer's argument, I'm sorry to say. And that is it's wrong. It's due process. If the government can do this, what does the right to jury trial mean? How does it mean anything anymore? And I understand the Watts case says you can be acquitted of conduct and still some of that can be used to sentence you. But this is a way to even get around that problem. Don't show the evidence at all. Don't bother showing the evidence to the jury. We don't think the jury's going to like it or go for it. Let's just keep it from the jury altogether. Let's put people away for a long, long time based upon weak evidence by getting somebody to admit something, telling the jury, look, they admitted it, and then punish them on all kinds of other material that's not strong enough to take the jury. If that's not a due process violation, I don't know what is. I wish I had a case that said it was a jury trial problem. But I think all the cases up to this point are Apprendi-type arguments. I can't win that because he got 235 months. Or a Watts case. I can't win that because not enough of the evidence was shown to the jury for the jury to even reject it. Instead, we're arguing that the jury's role has been in total usurped. We can't convince a jury of this, so we might as well use the other tools in our arsenal, and that is the sentencing gut that says that's not right, and we ask the court to find similarly. Regarding acceptance of responsibility, there's no doubt that there are some factors that cut strongly against it. But we do believe the district court found incorrectly that there were no constitutional implications when finding that acceptance of responsibility did not apply. He's always admitted responsibility for two kilograms of cocaine, and that's what went to trial. He went to trial to show that... No, he admitted that he sold them. He has steadfastly denied that he conspired to distribute them. In Alaska. That he was a part, that he knew... That's what the offense was. So, I mean, if you deny that you've done it, how can you at the same time accept responsibility? I don't get it. Let me try. If you read the evidence and you see what that evidence is, it's either Moreno had nothing to do with it or Moreno had something to do with Echevarria and Darius. There's no evidence that ties at trial, that ties Moreno to anybody but Carlos and Echevarria, which tells me the jury is finding him guilty of exactly what evidence was put in front of it, and that is something to do with Carlos and Echevarria and nothing to do with Alaska, and therefore venues improper. On acceptance of responsibility, can we look to his flight to Mexico and his being a fugitive for five years? Is that related? You're the court of appeals. You get to do that. Yes, Your Honor. You're the court of appeals. You get to do that. Yes, Your Honor. There are grounds to do it, but we're arguing that the grounds that the district court picked to deny were improper because there were constitutional implications. Counsel, what's your burden here? Do you have to – were these issues properly raised below? Some were and some were not. Are you here on plain error or – Some are plain error because they were not raised, and I can flip through. Which ones do you believe are on plain error review? All the ones that weren't. I'm sorry to – I don't mean to be flippant, but we are submitting that for every one of these issues that was not raised in the court below because they have constitutional implications, that they were – that they are plain error. But your arguments about the conspiracy, that's here on plain error review? The – Venue, plain error review. Venue – the venue issue was raised, so I don't think we're plain error there. And the sufficiency of the evidence – Was it raised on a motion for acquittal? A motion for acquittal was filed. Was the motion for acquittal – did it have a – did you argue that venue was improper? The attorney handling the case in the district court did not argue them simultaneously. There was a motion to dismiss for want of venue before trial and then a judgment of acquittal. They did not go hand-in-hand. Have I answered – did I understand correctly? Thank you, Your Honors. If there are no further questions, I'll have a seat. We request your time, sir. Thank you. We'll hear from the government. May it please the Court, my name is Joanne Farrington from the District of Alaska on behalf of the government. Ms. Farrington, keep close to the microphone. All right. Let me see if I can adjust it a little bit there. Is that better? That's better, thank you. Okay. Let me begin with a sentencing issue, since the Court made a comment that troubled me that this might have been dirty pool in some way. To the contrary – I'm not troubled by it. It certainly doesn't sound right. Now, maybe there's a perfectly logical set of authorities that you can look to to convince us. Well, to the contrary, Your Honor. I believe that it is a longstanding principle in sentencing any criminal defendant in American court that in selecting the appropriate sentence for the conduct that the defendant has been charged and found guilty of, that the Court looks to the history of the defendant, to his prior misconduct, and to his course of conduct that's similar in nature to the conduct charged here. Here you have a special verdict which limits the size of the quantity. This is true. And the sentence that the district court ended up giving to Mr. Moreno did not exceed the sentence that was appropriate for that quantity. In fact, it didn't even look to a conspiracy theory to expand the potential sentence. Instead, the Court was looking to what he described as a pattern of conduct. He was looking to a series of by this defendant that this defendant had admitted to over a series of about two years prior to the specific conspiracy that he was charged with here. The Court found by evidence that he described as beyond doubt that Mr. Moreno and Mr. Echevarria and other members of the conspiracy, but this is not conduct that's being attributed to Moreno because of conspiracy. It's conduct that he engaged in himself, attributed to him the additional quantities of cocaine that ended up with the level 34 sentencing guidelines level that he was sentenced to. The fact is that relevant conduct need not be part of the charge conspiracy. The factors that this Court looks to is whether the same course of conduct is similar in nature, whether it's been regular, and whether it's been reasonably close in time. In this case, kilogram quantity dealings in cocaine, exactly the same crime. Regular happened again and again over the course of the prior two years, never a lapse in time of more than three months, and it was clearly close in time. It began about two years before the charge conspiracy and ended with the charge conspiracy. I believe that under the guidelines that this conduct was clearly relevant for the district court to take into account in deciding what an appropriate sentence for Mr. Moreno was. It's true that the particular conspiracy that he was charged with and that we presented to the jury was a small conspiracy. It was one period in January of 1993 involving two kilograms of cocaine. The conspiracy, in fact, had tentacles that spread as far as Bogota to Nevada to California and ultimately to Alaska. But it was a relatively small conspiracy. But that does not affect the relevant conduct that the district court could properly take into account in determining an appropriate sentence here. Furthermore, the evidence in the sentencing hearing was beyond credible. The court clearly found that he was convinced beyond a doubt that this had occurred, primarily because Mr. Moreno himself had conceded that he had been engaging in this course of conduct. The district court found that the FBI agent's testimony who interviewed Mr. Moreno to be totally credible, to be supported by her contemporaneous notes, and it seems to me that on a fair view of the record, there simply is no question that that was exactly what Mr. Moreno had done and what he had admitted to doing. As for the issue of acceptance of responsibility, I will just touch on that briefly. Mr. Moreno fled the jurisdiction. This case is now over ten years old, primarily because Mr. Moreno fled. At that point, did the district judge take that into account with respect to that specific matter of the acceptance of responsibility? I believe that the specific point that he discussed out loud when he was talking about the issue of acceptance of responsibility was the fact that Mr. Moreno had chosen to go to trial again, that in his view, the reason why Mr. Moreno had chosen to go to trial again was because the case was ten years old, because witnesses had disappeared, because memories could be counted on to have failed, and he thought that the government probably wouldn't be able to make its case. He turned out to be wrong, and the jury did find him guilty. But that is the issue that the district judge focused on. I don't think that that means that this court can't take into account what factors might logically go into whether or not a particular defendant has accepted responsibility. And to have pled guilty initially, then before sentencing to flee, disappear for five and a half years, come back for sentencing once he is recaptured, and then insist on a retrial, still today, before us today, still denying that he's guilty of the crime with which he's charged, and to contend that he should get a lower sentence because he's accepted responsibility simply makes no sense. Turning to the question of the existence of the conspiracy, this defendant sold two kilograms of cocaine and admitted that he did it knowing that the person to whom he was going to sell it intended to resell it for distribution, that, in fact, he was drawn into this conspiracy by Mr. Echevarria knowing full well what his role was. He was to be the middleman. He was to go and find the drugs that the conspiracy needed for its further distribution. But he thought it was going to be in California, not Alaska. That's the argument of the other side. It did, and it's an argument that puzzles me because I'm aware of absolutely no authority that suggests in any way that a conspiracy to distribute cocaine, that all of the co-conspirators need to know exactly where the ultimate sales are going to take place. In fact, I cited to this Court the case of United States v. Myers, which involved a defendant in Florida who had conspired to supply cocaine to a distribution that was ultimately going to take place in Montana. And he made exactly the same argument. I had no idea it was going to Montana. I was in Florida. This Court specifically found that not only did it make no difference because the conspiracy charged as the conspiracy that was charged here was that the conspiracy was to take place in Montana and elsewhere, but that by the very fact of the quantity of the cocaine and the nature of the nationwide distribution of cocaine that occurs in this country, that it was foreseeable that the distribution would take place other than Florida. And that's exactly the same situation that we have here. Ms. Farrington, given the fact that we have this established ring that was working the L.A. to Alaska line, are there any circumstances under which someone who sold to that ongoing conspiracy would then not be deemed part of the conspiracy? Well, it's difficult to pull back and say this is the point at which the conspiracy would end. If you were talking about relatively small amounts so that it was not necessarily foreseeable that it would be distributed, if you were talking about someone who had no prior dealings with any of the members of the conspiracy, as Mr. Moreno conceded that he had dealt drugs with and for Mr. Echevarria in the past and that he knew most of the other members of the conspiracy, that he was brought into Mr. Echevarria's home. Now, this is something that one does not do with arm's length drug dealers on the street. You don't take them home with you and introduce them to the other members of the conspiracy who are waiting there to receive the cocaine. Those are factors that certainly underscore the strength of the case that Mr. Moreno knew perfectly well what he was doing, what he had agreed to do when he was asked by Mr. Echevarria to obtain two kilos of cocaine for him. The defendant relies heavily on the case of the United States v. Lennock. I would just like to briefly point out for the Court that that case is not relevant to the situation. That case was exploring the question of whether there was any conspiracy at all. It involved a defendant who was growing marijuana at home and would occasionally distribute small quantities of it to his friends, either giving it away or selling it. This Court said that that in and of itself, those spot exchanges, did not establish a conspiracy to distribute the marijuana. This Court subsequently has held that in a case like this one, where there is proof of an established conspiracy, Lennock simply has no relevance at all. In this situation, the question is, given the conspiracy that was amply proven at trial, is there evidence of some slight connection of this defendant to that conspiracy sufficient to hold him responsible? Not only is the evidence not slight, and I would suggest that it's quite strong because Mr. Moreno himself admitted that he was a participant in the conspiracy. Does the Court have any further questions? In that case, I will rest on my brief. Thank you. Thank you, Counsel. Mr. Brandt, you have some reserved time. Thank you, Your Honor. The goal of the conspiracy here was to distribute cocaine in Alaska. Moreno did not join in that goal, and that's one of the elements of conspiracy. How far does a conspiracy go? Does the bellhop in the hotel where Echevarria is staying, a member of the conspiracy for providing Echevarria a knife to cut open the bag of cocaine? But on the other hand, Mr. Brandt, Mr. Moreno is dealing drugs. He knows that the quantity that he's giving them is not for recreational and personal use, that it is going to be distributed someplace. Now, he doesn't know that it's going to Alaska or he doesn't know it's going to Nevada or Arizona. Because he's selling it in California, he assumes that it will at least be sold in California and could be faulted for that if he were caught. But if he is selling for purposes of distribution, why can't he be held accountable for where it might foreseeably go? Two answers. One, he knows Echevarria. He's dealt with Echevarria in the past and has no reason to believe that this isn't different than the past. This is the evidence that they put on, the government put on at sentencing, not at trial. And two, my understanding of the elements of conspiracy is whatever the goal of the conspiracy is, every member of that conspiracy has to agree to that goal. This goal, in this particular case, as shown from the evidence, was to take it back to Alaska. And that's what, in fact, happened when it went back in the Tide box. Everybody has to understand the goal. But now, you know, how specifically, how narrowly or how broadly you define the goal will sort of judge the case here. And that's my submission, is that that was the goal. Every conspiracy might have a different goal. We're going to do it because we're going to raise money for a church. We're going to do it because we're going to get rich and buy BMWs. That might be too specific. But when the goal of this particular conspiracy was and always has been to take drugs from different parts of the country, three different sources, and take it back to Alaska, does it strain that conspiracy for this organization that has three sources in the contiguous states to say specifically, don't use Zaloko. Whatever you do, don't go to him. Mr. Brandt, if this organization had, in fact, sold these drugs in California, it was dealing, let's say it was dealing drugs down in California and was selling some up in Alaska, and the government had decided to charge this case in California, would Mr. Moreno have an argument that he wasn't a part of a conspiracy to sell drugs in California? I think he'd have a much tougher argument. He certainly wouldn't have an argument about venue, would he? No. But I think he'd have an argument about showing one conspiracy to the jury, proving it, and then showing another one to the trial court. But, yeah, I think the venue problems tanked. But I think he'd be happier to be in California. And would you have any kind of an argument about conspiracy as to whether he had joined a conspiracy, providing, again, two kilos of cocaine that he understands is not for recreational use. It's for distribution. He knows that. He's been doing this for a long time. He'd have a much tougher argument, yes, Your Honor, concerning conspiracy. The real question is not then whether he's joined a conspiracy, but whether he could foresee that the conspiracy might take him someplace other than California. Or whether it was the conspiracy that the government was putting on evidence about, that it spent more than half the trial time, more than half the pages, talking about Alaska and all these people in Alaska that it never proved he had anything to do with. The government mentioned Moreno ended up getting a sentence that was less than 20 years. Well, in this, my understanding is, in this circuit, the law is that what you're exposed to, what's the sentence that you're exposed to? Drug amount was an element in this case. And if drug amount's an element, that element was proved to be a certain amount and then rejected by the district court. The government used the phrase conduct attributed to him that he engaged in himself, that he admitted. But the drug amount for that conduct that he admitted was not presented at trial. And that's the dirty pool. If the government was interested in proving 15 kilograms, why didn't it put that evidence on at trial? If he was admitting all this evidence, why didn't we put that evidence on? If you were asking Ms. Farrington, she'd probably say because they didn't have to under existing law. That's what scares me, I guess. That's what I'm asking this court to fix. I didn't hear the line of cases that says it's okay to prove one case to the jury and prove another case to the trial court. To the trial judge sentencing. He was sentenced within the range permissible for the crime of which he was convicted. And that's why I can't win an argument regarding Apprendi or Watts. But doesn't it strike you hard in the belly and makes you not want to eat lunch to hear that the government is going to go out there and prove 501 grams of cocaine? That's all they've ever done. 501 grams of cocaine and it's okay later to show that he was thinking about something else and talked about something else and then sentenced, a sentence for the higher amount. It doesn't violate Apprendi, but it should be found to have violated the idea that we're only going to be punished what our peers in the community have decided beyond a reasonable doubt. It's a way to get around it. One final point. The government mentions this long history of cases where you use this other information. This history here was invented in 1984 and implemented after that. That means it's 20 years old and that's a relatively short period of time in our common law system. Just remind me, if the judge had only sentenced him for the 501 grams, what level would he have drawn? Oh, heaven to Betsy. Somewhere in the 20s. I'd have to go back and look. I don't have that. Approximately what kind of sentence range would he be looking at? I didn't do that math, Your Honor. I apologize. 13 kilograms. Do you remember what he drew? What his level was? It was a total of 15, so he got 30. Because they added the 2 to the 13. So I believe he got 30 or 32. Okay. And he ended up with 235 months, is that correct? Yes, Your Honor. And that was at the low end of the range. Yes, Your Honor. Once we got to that recount. I think that was the bottom of the range the second time. Thank you, Your Honors. Have a wonderful morning. The case just argued will be submitted for decision. Now, the Court will take a short recess. But before doing so, I want to address counsel in the next case, Lambert v. Blodgett. We noticed that this case, the briefing in this case, was filed under seal. And as I understand it, the rationale was that there were confidential communications between attorney and client.
judges: O'scannlain, Rymer, Bybee